KRAFT-PHENIX CHEESE Co. *v.* UNITED STATES (No. 3490)[1]

[1] T. D. 45510.

United States Court of Customs and Patent Appeals, February 29, 1932

*Curtis E. Loehle* for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*Lyman Ward* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument February 11, 1932, by Mr. Loehle and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court denying the petition of appellant for remission of additional duties assessed by the collector at the port of Rouses Point, N. Y., (in accordance with the provisions of section 489 of the Tariff Act of 1922), by virtue of the fact that the final appraised value of imported merchandise exceeded the entered value.

It appears from the record that the Kraft-Phenix Cheese Co. of the United States purchased 8 carloads of Velveeta cheese from the Kraft-Phenix Cheese Co. (Ltd.), of Montreal, Canada, a subsidiary of the United States company. The cheese was imported in carload lots during the period from October 27 to December 3, 1928. Each importation was entered at $1.60 per dozen half-pound packages, and each was appraised at $1.80 per dozen half-pound packages. On appeal to reappraisement, the appraised value was sustained. It further appears from the record, and from the statements of counsel for appellant made at the time of the oral arguments in this court, that appellant had made a previous importation of one carload of like merchandise, about two weeks prior to the first importation here, and entered it at $1.80 per dozen half-pound packages.

On the trial in the court below, John H. Kraft, vice president in charge of sales of appellant, testified that appellant and its Canadian subsidiary were under different management; that, although appellant transacted business with its Canadian subsidiary on the same basis as other purchasers of cheese, he was consulted by the Canadian company as to its "sales, plants, etc., at different times," and had acted in an "advisory capacity" in those matters; that he knew that the Velveeta cheese was being sold by the Canadian company in Canada in quantities of 1 carload or less at $1.80 per dozen half-pound packages; that he did not know, and had made no effort to ascertain, whether like merchandise had been sold for consumption in Canada in quantities as large as 5 carload lots; that $1.60 per dozen half-pound packages was a fair price. when the merchandise was purchased

in quantities as great as 5 carloads; and that the involved merchandise was entered at $1.60 per dozen half-pound packages in accordance with his instructions.

At the time the merchandise was entered, each invoice contained the following statement:

* * * This cheese when sold in quantities of 1 carload or less, $1.80 per dozen; this cheese when sold in quantities of 5 carloads or more, $1.60 per dozen * * *.

The record in the reappraisement proceedings was introduced in evidence. It appears therefrom that the Canadian company commenced to sell Velveeta cheese late in May, 1928; that it was sold and freely offered for sale to all purchasers in Canada in the usual wholesale quantities—250 pounds to 1 carload—at $1.80 per dozen half-pound packages; that the Canadian company was willing to sell it in quantities of 5 carloads or more at $1.60 per dozen half-pound packages, but no such sale had ever been made.

The witness Granger, sales manager of the Canadian company, testifying for the importer in the reappraisement proceedings, said that nearly 100 per centum of all Velveeta cheese sold by his company for export to the United States was sold to appellant; that appellants' purchase of 8 carloads was unusually large and naturally affected the price charged by the Canadian company; that his company had extensively advertised Velveeta cheese and, as a part of its newspaper advertising campaign, published coupons having a cash value of 5 cents each to those who purchased the cheese at retail in Canada; that his company was obligated to redeem such of those coupons as were presented to the retailers; that, although the total number of coupons published represented a potential obligation of approximately $28,000, his company had been called upon to redeem only a small percentage of them—about $2,700.

It further appears that the Canadian company wrote to its district managers and brokers and told them that if they could secure—

eight or ten wholesalers who will give you a pooled order aggregating five cars, to be taken within one month, you may quote $1.60 per dozen. * * * You do not need to be told that these prices are to a certain extent confidential; in other words, you will only approach such jobbers as you feel are large enough to be interested.

It is contended by counsel for appellant that the imported cheese was a relatively new commodity, having been on the market for approximately four months at the time the merchandise in question was purchased; that the advertising campaign referred to in the record had made it difficult to ascertain the exact market value; that, due to these circumstances, a full and complete statement of values was made in the invoices so as to present the facts to the appraiser; and that, as these facts had been established on the trial, the court

below erred in denying appellant's petition for remission of additional duties.

Section 489, *supra*, provides that, in cases of this character, an importer must establish by satisfactory evidence that the entry of the merchandise at a value less than that returned upon final appraisement was without—

any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

It appears from the evidence that the usual wholesale quantities in Canada were from 250 pounds to 1 carload. Furthermore, there had never been a sale of this or similar cheese for consumption in Canada in a quantity as large as 5 carloads or more, as might have been inferred from the statements in the invoices.

It appears that the witness Kraft acted in an advisory capacity to the Canadian corporation and knew the facts regarding its sales. Accordingly, he must have known that the cheese had never been sold for consumption in Canada in quantities in excess of 1 carload, and that the price for it in the usual wholesale quantities—250 pounds to 1 carload—was $1.80 per dozen half-pound packages. Nevertheless, the cheese was entered at $1.60 per dozen half-pound packages, in accordance with these instructions.

It may be, as argued by counsel for appellant, that the Canadian company was willing to receive $1.60 per dozen half-pound packages if purchased in quantities of 5 carloads or more. However, the only evidence in the record to establish this fact is a letter—Exhibit A—written by the sales manager of the Canadian company to its district managers and brokers stating that if it were possible to get a "pooled order aggregating five cars, to be taken within one month," they might quote $1.60 per dozen. The same exhibit, however, contains the statement that that price was to a "certain extent confidential." In any event, such a quantity was not the usual wholesale quantity.

The purchase of 8 carloads by appellant was an unusual transaction, and the price paid by it was likewise unusual. Furthermore, the coupons involved in the advertising campaign by the Canadian company had nothing to do with the market value or the price at which the involved or similar merchandise was sold and freely offered for sale for consumption in Canada, although they did, to some extent, affect the profits of the manufacturer.

Having knowledge of these facts, it ought to have been evident to appellant that the statement that "this cheese when sold in quantities of 5 carloads or more, $1.60 per dozen," contained in the invoices was an inaccurate statement of the facts, which, unexplained, would tend to mislead the appraiser.

We are of opinion that the court below reached the right conclusion, and its judgment is *affirmed*.